UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CHEVRON CORPORATION, | * | |
| | * | |
| Petitioner, | * | |
| | * | |
| v. | * | Civil Action No. 10-mc-10352-JLT |
| | * | |
| JONATHAN S. SHEFFTZ, | * | |
| | * | |
| Respondent. | * | |

MEMORANDUM

December 7, 2010

TAURO, J.

I.      Introduction

        Chevron Corporation ("Petitioner") is the defendant in litigation in Lago Agrio in the

Republic of Ecuador ("Lago Agrio Litigation").[1]  On September 16, 2010, the plaintiffs in the

Lago Agrio Litigation raised their alleged damages and submitted eight expert reports.[2]  On

October 22, 2010, Petitioner filed petitions pursuant to 28 U.S.C. § 1782 in various actions

across the country to depose and conduct discovery of at least six of these experts.  Presently at

issue is one of those six actions: Petitioner's Ex Parte Application of Chevron Corporation for an

Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery on Jonathan S. Shefftz for Use in

---

        [1] See In re Chevron Corp., 10 MC 00002 (LAK), 2010 U.S. Dist. LEXIS 117679, at *2
(S.D.N.Y. Nov. 4, 2010).

        [2] Mem. Points Authorities Supp. Ex Parte Appl. Order Pursuant 28 U.S.C. § 1782
Conduct Disc. Jonathan S. Shefftz Use Foreign Proceedings, 9 [#2] [hereinafter Ex Parte App.].

Foreign Proceedings [#1].[3]  For the following reasons, Petitioner's Ex Parte Application is

ALLOWED IN PART and DENIED IN PART.

II.     Background

    A.     The Consortium, Aguinda Action, Settlement and Release Agreements

    From 1964 to 1992, Texaco Petroleum Company ("TexPet"), then an indirect subsidiary

of Texaco, Inc., held an interest in an oil consortium in the Oriente region of Ecuador

("Consortium").[4]  Petroecuador, Ecuador's state-owned oil company, became a majority

stakeholder of the Consortium in 1976 and has been the sole owner of the Consortium since

1992.[5]

    In 1993, a group of residents from the Oriente region of Ecuador brought a class action

suit against Texaco in the Southern District of New York based on TexPet's operations in the

Consortium.[6]  The complaint, captioned Aguinda v. Texaco, alleged pollution of the forests and

rivers in Ecuador and sought billions of dollars in damages on various theories.[7]

---

    [3] The Parties (primarily Petitioner) have also asked this court to take judicial notice of various documents.  Req. Judicial Notice Ct. Filings & Orders Lago Agrio Litig. & Provisions Ecuadorian Law [#5]; Req. Judicial Notice U.S. Filings & Orders [#6]; Supplemental Req. Judicial Notice [#32, #33, #34]; Req. Judicial Notice U.S. Filings & Orders [#37] (filed by Respondent); Supplemental Req. Judicial Notice [#42].  Given that neither Party has objected, this court takes judicial notice of the documents.  Fed. R. Evid. 201(d).

    [4] See, e.g., Aguinda v. Texaco, Inc., 142 F. Supp. 2d 534, 537 (S.D.N.Y. 2001), aff'd, 303 F.3d 470, 476 (2d Cir. 2002); Ex Parte App., 4 [#2].

    [5] See, e.g.,  Aguinda, 142 F. Supp. 2d at 537; In re Chevron Corp., 709 F. Supp. 2d 283, 285 (S.D.N.Y. 2010); Ex Parte App., 5 [#2].

    [6] In re Chevron Corp., 709 F. Supp. 2d at 285–86.

    [7] Id. at 286.

While the <u>Aguinda</u> litigation was pending, TexPet entered into a 1995 settlement agreement with the Government of the Republic of Ecuador ("GRE") and Petroecuador.[8]  In the 1995 settlement agreement, TexPet agreed to perform environmental remedial work in exchange for GRE and Petroecuador releasing all of their claims related to TexPet's environmental impact from its involvement in the Consortium.[9]  In a 1998 "Final Document," the GRE and Petroecuador declared the 1995 settlement agreement "fully performed and concluded," and discharged TexPet from any liability by it or its affiliates related to the 1995 settlement.[10]  By 2001, Petitioner (Chevron) acquired Texaco[11] or the two companies merged.[12]

Also in 2001, Texaco succeeded in having the <u>Aguinda</u> action dismissed on <u>forum non conveniens</u> grounds.[13]

---

[8] <u>In re Chevron Corp.</u>, 709 F. Supp. 2d at 286.

[9] <u>Republic of Ecuador v. ChevronTexaco Corp.</u>, 376 F. Supp. 2d 334, 342 (S.D.N.Y. 2005); <u>see also</u> Ex Parte App., 5 [#2].  The 1995 settlement agreement excluded the GRE's and Petroecuador's release of claims related to TexPet's environmental remedial work contracted under the 1995 settlement, which were to be released once TexPet's remedial work was performed to the "satisfaction of the [GRE] and Petroecuador."  <u>Republic of Ecuador</u>, 376 F. Supp. 2d at 342.

[10] <u>Republic of Ecuador</u>, 376 F. Supp. 2d, at 342.

[11] <u>See, e.g.</u>, <u>In re Chevron Corp.</u>, 10 MC 00002 (LAK), 2010 U.S. Dist. LEXIS 117679, at *3 n.3 ("Chevron acquired Texaco . . . ."); <u>Company News: Chevron Purchase of Texaco Wins Approval</u>, N.Y. Times, Sept. 08, 2001, <u>available at</u> http://www.nytimes.com/2001/09/08/ business/company-news-chevron-purchase-of-texaco-wins-approval.html.

[12] <u>See, e.g.</u>, <u>In re Chevron Corp.</u>, 709 F. Supp. 2d at 287, n.9 (saying that Chevron and Texaco merged); News Release, Fed. Trade Comm'n, FTC Consent Agreement Allows the Merger of Chevron Corp. and Texaco Inc., Preserves Market Competition (Sept. 7, 2001), <u>available at</u> http://www.ftc.gov/opa/2001/09/chevtex.shtm.

[13] <u>See Aguinda</u>, 142 F. Supp. 2d at 554.

B.     Lago Agrio Litigation

In 2003, forty-eight Ecuadorians, including some of the Aguinda plaintiffs, sued Petitioner in Lago Agrio, Ecuador ("Lago Agrio litigation").[14]  The forty-eight Ecuadorians ("plaintiffs") sued for, among other things, the violation of diffuse environmental rights created by a 1999 Ecuadorian law.[15]  Petitioner alleges that the GRE publicly provided its "full support" to the Lago Agrio plaintiffs[16] and announced that it would receive ninety percent of any recovery.[17]

The Ecuadorian court, through a "judicial inspection process," ordered both plaintiffs' and Petitioner's experts to investigate and report on the environmental conditions at former Consortium oil production sites.[18]  The Ecuadorian court appointed "Settling Experts" to resolve any conflicts between the conclusions of the party-appointed experts based on their respective inspections.[19]  Petitioner alleges that the Settling Experts, in the only report they issued, sided with Petitioner's experts.[20]

The Lago Agrio plaintiffs' lawyers requested that the Ecuadorian court abandon the judicial inspection process and instead appoint a single expert to conduct a global assessment of

---

[14] In re Chevron Corp., 709 F. Supp. 2d at 286.

[15] Id.; see also Ex Parte App., 6 [#2].

[16] Ex Parte App., 6 [#2]; Barrett Decl., Ex. H (Press Release, Mar. 20, 2007).

[17] In re Chevron Corp., 709 F. Supp. 2d at 287.

[18] Req. Judicial Notice Ct. Filings & Orders Lago Agrio Litigation & Provisions Ecuadorian Law, Ex. A, 1 [#5] [hereinafter Lago Agrio RJN].

[19] Ex Parte App., 6 [#2].

[20] Ex Parte App., 6 [#2].

the entire area.[21]  After pressure from colleagues of the future president of Ecuador (Rafeal

Correa),[22] the Ecuadorian court granted the plaintiffs' motion and appointed a single global

damages expert, Richard Stalin Cabrera Vega ("Cabrera"),[23] to impartially and transparently

assess global damages.[24]

Portions of a film later leaked to Petitioner revealed Cabrera in an eight-hour meeting with

plaintiffs' counsel and their consultants two weeks before Cabrera's March 19 appointment,

openly discussing that all of plaintiffs' team would contribute to Cabrera's report and the work

"isn't going to be the expert's."[25]  After Petitioner publicized the film, plaintiffs raised their

---

[21] Lago Agrio RJN, Ex. C, 1 [#5].

[22] Petitioner points to an amicus brief filed by colleagues of Correa.  See Lago Agrio RJN, Ex. B [#5].

[23] Lago Agrio RJN, Ex. D, 3 [#5] (indicating, in an order on March 19, 2007, the appointment of Cabrera as requested by Plaintiffs).

[24] Lago Agrio RJN, Ex. H, 10 [#5].  The Ecuadorian court, as provided by Ecuadorian law, reminded Cabrera that as an expert he was an "auxiliary to the Court" and his work would be transparent to both parties.  Id. at 2.  Moreover, Cabrera was reminded to maintain "strict independence" with regard to the parties.  Id. at 6, 16; see also In re Chevron Corp., 10 MC 00002 (LAK), 2010 U.S. Dist. LEXIS 117679, at *20 (referencing Cabrera's official swearing in which he promised to perform his duties with complete impartiality and independence); Ex Parte App., 8 [#2] (compiling Cabrera's statements to the Ecuadorian court affirming his independence).

[25] Barrett Decl., Ex. B, at 191-00-CLIP-03 [#3] (DVD of excerpts from unreleased footage from the movie "Crude" on file with the court); Barrett Decl., Ex. C, 13 [#3] (true and correct copies of transcriptions and translations of the video files in Exhibit B).  Petitioner alleges other collusion between Cabrera and plaintiffs, including that the plaintiffs' litigation team found that Petroecuador caused environmental contamination, but ghostwrote in Cabrera's report that TexPet was responsible for all the alleged contamination.  See Ex Parte App., 9 [#2].

damage pleading from $27 billion to potentially as much as $113 billion[26] and filed eight new experts reports.[27]  Petitioner alleges that each report, including Respondent Shefftz' report,[28] relied on Cabrera's report and is a disingenuous effort to provide a false front for the continued real source of the underlying opinions: the fraudulent Cabrera Report.[29]

Respondent Shefftz is a consultant based in Amherst, Massachusetts.[30]  Respondent was hired to offer an opinion in the Lago Agrio Litigation on the amount of "unjust enrichment" for which Petitioner should be responsible.[31]  Respondent assessed an unjust enrichment figure of between $4.57 and $37.86 billion.[32]  Respondent claims to have done his "own financial analysis" but concedes that he started "with the Cabrera report's engineering figures and cost estimates" to "arrive at an unjust enrichment range" mentioned above.[33]  Respondent begins the "Context" section of his report by explaining: "As described in the Cabrera's reports annex/appendix for unjust enrichment, [Petitioner] should have incurred certain costs . . . . Therefore, [Petitioner]

---

[26] See Lago Agrio RJN, Ex. Q, 9–15 [#5] (discussing criteria for the assessment of environmental damages).

[27] Lago Agrio RJN, Ex. R (Allen), Ex. S (Shefftz), Ex. T (Picone), Ex. U (Rourke), Ex. V (Rourke Addendum), Ex. W (Barnthouse), Ex. X (Scardina), Ex. Y (authorship unclear) [#5].

[28] Petitioner alleges that Respondent Shefftz signed an expert report in the Lago Agrio litigation and is thus a testifying expert subject to discovery under § 1782.  See Lago Agrio RJN, Ex. S [#5].

[29] Ex Parte App., 10 [#2].

[30] Lago Agrio RJN, Ex. S, A-1 [#5].

[31] Lago Agrio RJN, Ex. S, 1 [#5].

[32] Lago Agrio RJN, Ex. S, 1 [#5].

[33] Lago Agrio RJN, Ex. S, 1 [#5].

avoided theses costs over a period of many years."[34]

On this basis, Petitioner alleges that Respondent's report is a vehicle to "launder" Cabrera's opinion to place distance between the facts on which Respondent relies and the fraudulent basis for the facts.[35]  Petitioner therefore seeks to discover the "real source" of Respondent's opinion.[36]

C.       The UNCITRAL Arbitration

The United States and Ecuador are both parties to a bilateral investment treaty ("the BIT").[37]  In 2009, Petitioner initiated an international arbitration against the Republic of Ecuador pursuant to the BIT ("UNCITRAL Arbitration").[38]  Petitioners sought to demonstrate the corruption and improper collusion between GRE and the plaintiffs in the Lago Agrio Litigation.[39] This arbitration between Petitioner and the GRE works under the United Nations Commission on

---

[34] Lago Agrio RJN, Ex. S, 2 [#5].

[35] Ex Parte App., 10 [#2].

[36] Ex Parte App., 10 [#2].

[37] Investment Treaty with the Republic of Ecuador, Aug. 27, 1993, S. Treaty Doc. No. 103–15.

[38] In re Chevron Corp., 10 MC 00002 (LAK), 2010 U.S. Dist. LEXIS 117679, at *38.

[39] See, e.g., Ex Parte App., 1 [#2]; Resp't's & Ecuadorian Pls.' Joint Brief Opp'n Chevron Corporation's Ex Parte Appl. Disc. Under 28 U.S.C. § 1782,  5–6 [#23] [hereinafter Joint Brief Opp'n].  Petitioner's complaint also alleged that the GRE abused the criminal justice system, and that the GRE breached its investment agreements and treaty obligations.  In re Chevron Corp., 10 MC 00002 (LAK), 2010 U.S. Dist. LEXIS 117679, at *38–39 ("[Petitioner] seeks, among other things, declarations that Chevron and its affiliates have no liability with respect to the alleged environmental pollution, that Ecuador has breached the BIT and its treaty obligations in various respects, and indemnification from Ecuador for any liability Chevron may have in the Lago Agrio litigation.").

International Trade Law ("UNCITRAL") rules and procedures.[40]

III.   Discussion

Petitioner seeks to depose and obtain discovery from Respondent under § 1782 for use in both the Lago Agrio Litigation and the UNCITRAL Arbitration.[41]

   a.   Section 1782

Section 1782 authorizes the "district court of the district in which a person resides or is found" to give his testimony or statement or "to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . ."[42]  To obtain discovery under § 1782, a petitioner must first meet three statutory requirements: (1) the order must be issued by "[t]he district court . . . of the district in which [respondent] resides or is found"; (2) the discovery must be "for use in a proceeding in a foreign or international tribunal"; and (3) the application is made by a foreign or international tribunal or an "interested person."[43]

Here, Petitioner has met the first and third statutory requirements.  Respondent does not

---

[40] In re Veiga, No. 10-370, 2010 U.S. Dist. LEXIS 111468, at *12 (D.D.C. Oct. 20, 2010).  The parties can, however, consent to the arbitration being "in accordance with any other arbitration rules."  Investment Treaty with the Republic of Ecuador, Aug. 27, 1993, S. Treaty Doc. No. 103-15, art. VI(3)(a)(iv).

[41] Ex Parte App., 11–14 [#2].

[42] 28 U.S.C. § 1782(a).

[43] See id.; see also Schmitz v. Bernstein Liebhard & Lifshitz, LLP, 376 F.3d 79, 83 (2d Cir. 2004) (listing three statutory requirements); cf. In re Clerici, 481 F.3d 1324, 1331–32 (11th Cir. 2007) (including a fourth statutory requirement, that the request must seek evidence, "whether it be the 'testimony or statement' of a person or the production of 'a document or other thing'").

argue otherwise.[44]

Petitioner has also met the second statutory requirement—that the evidence be "for use" in a "foreign tribunal or proceeding"—for two reasons.  First, Respondent's argument that the UNCITRAL Arbitration is not a "foreign tribunal" because it is established by a private body and only governed by international rules is a view that has been eschewed by the majority of courts,[45] including those in this district.[46]  Rather, international arbitral bodies operating under UNCITRAL rules constitute "foreign tribunals" for purposes of § 1782.[47]  Second, the evidence can still be "for use" in the Lago Agrio court, which is clearly a "foreign tribunal," because the Lago Agrio court has yet to issue an order closing the case to the submission of new evidence.  There is, therefore, authorization to conduct discovery "for use" in both the Lago Agrio Litigation and the UNCITRAL Arbitration.

    b.    <u>The Four Intel Factors</u>

---

[44] The first requirement is met because Respondent resides in Amherst, Massachusetts and thus "resides or is found" in the District of Massachusetts.  The third requirement is met—Petitioner is an "interested person"—because it is a defendant in the Lago Agrio Litigation and a claimant in the UNCITRAL Arbitration.  <u>See, e.g.</u>, <u>In re Chevron Corp.</u>, 709 F. Supp. 2d 291; <u>In re Merck & Co.</u>, 197 F.R.D. 267, 270 (M.D.N.C. 2000); <u>Chevron Corp.</u>, 7:10-mc-00067, 2010 U.S. Dist. LEXIS 125174, at *4–5 (W.D. Va. Nov. 24, 2010).

[45] <u>Norfolk S. Corp. v. Gen. Sec. Ins. Co.</u>, 626 F. Supp. 2d 882, 884–85 (N.D. Ill. 2009) (collecting cases).

[46] <u>In re Application of Babcock Borsig AG</u>, 583 F. Supp. 2d 233, 239 (D. Mass. 2008) (holding the ICC to be a foreign tribunal, finding the reasoning in <u>Nat'l Broad. Co., Inc. v. Bear Stearns & Co., Inc.</u>, 165 F.3d 184 (2d Cir. 1999), and <u>Republic of Kazakhstan v. Biedermann Int'l</u>, 168 F.3d 880, 883 (5th Cir. 1999), unpersuasive, and explaining that the Supreme Court's <u>Intel</u> decision provides no basis to draw a distinction between public and private arbitral tribunals).

[47] <u>In re Application of Chevron Corp.</u>, 709 F. Supp. 2d at 291.

Even if this court is authorized to grant discovery under § 1782, it is not required to do so.[48]  The Court in Intel provided four discretionary factors for district courts to consider in ruling on a § 1782(a) request: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding"; (2) the receptivity of the foreign tribunal to U.S. court assistance; (3) whether the § 1782 application is an attempt to "circumvent foreign proof-gathering restrictions"; and (4) whether the documents and testimony sought are "unduly intrusive or burdensome."[49] The discretionary Intel factors, considered together, weigh in favor of granting Petitioner's discovery request.

The first Intel factor—whether "the person from whom discovery is sought is a participant in the foreign proceeding"—weighs heavily in favor of granting discovery and is not in dispute. The Amherst-based Respondent resides outside the jurisdiction of both the Lago Agrio court and the UNCITRAL Arbitration panel.  Both tribunals, therefore, cannot order the discovery that Petitioner seeks in this § 1782 action,[50] and the first factor weighs in favor of granting discovery.

The second Intel factor—whether the foreign tribunal is receptive to assistance—weighs slightly in favor of granting discovery.  There are at least two different views to this factor that this court could adopt.  On one view, Respondent has the burden of proving that the foreign tribunal is unreceptive to the evidence.  Absent such proof, the factor weighs in favor of granting

---

[48] Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 264 (2004).

[49] Id. at 264–65.

[50] Id. at 264.

discovery.[51]  On a second view, however, a court can require "authoritative proof" regarding the receptivity of the foreign tribunal before finding that this factor weighs in favor of discovery.[52]  On the first view, Respondent has produced no evidence showing the foreign tribunal is not receptive and the Intel factor weighs in favor of discovery.  On the second view, Petitioner has not pointed to any authoritative proof that either foreign tribunal desires this specific evidence.

This court will take a middle ground between the two views.  The Lago Agrio court appears to still be accepting the submission of documents.[53]  Respondent argues that the documents will be merely added to the file because the judge is required to accept documents by the rules of the court and the judge would ignore other "irrelevant" documents.[54]  But there are two flaws with Respondent's argument.  First, the Lago Agrio court recused this Ecuadorian judge and has not indicated that it would abide by the prior order.[55]  Second, as another District Court evaluating one of Petitioner's recent § 1782 requests pointed out:

> [E]ven if the [Ecuadorian] Court does not evaluate the information obtained during
> discovery, this does not mean that the Ecuadorian Court will not allow this discovery.  As
> the Ecuadorian Court has indicated, even if they do not evaluate the information, it will

---

[51] The First Circuit has not spoken on the issue, but the Second and Third Circuits support this proposition.  In re Bayer AG, 146 F.3d 188, 196 (3d Cir. 1998); Euromepa, S.A. v. R. Esmerian, Inc., 51 F.3d 1095, 1099 (2d Cir. 1995).

[52] This is the view taken by a district court in the First Circuit.  In re Application of Babcock Borsig AG, 583 F. Supp. 2d at 241 (exercising Intel discretion to deny discovery until there was an affirmative indication of foreign tribunal receptivity to the requested materials).

[53] Lago Agrio RJN, Ex. P, at 1 [#5] (stating that evidence will be "taken into account at the appropriate point in the proceedings").

[54] Joint Brief Opp'n, 18 [#23].

[55] Supplemental Req. Judicial Notice, Ex. F [#34].

still go in a file in the Court."[56]

Moreover, the UNCITRAL Arbitration panel may have an interest in these documents.  The second Intel factor therefore weighs slightly in favor of discovery.

The third Intel factor—whether Petitioner is attempting to circumvent foreign proof-gathering restrictions—weighs heavily in favor of granting discovery.  Respondent argues that Ecuador does not allow deposition or document discovery from experts without a court order and Petitioner failed to seek the Lago Agrio court's blessing that it desired the fruits of Petitioner's § 1782 discovery requests.[57]  Petitioner, however, need not seek the foreign court's blessing under this factor.  The inquiry here is whether the discovery is being sought in bad faith.[58]  The Lago Agrio plaintiffs submitted Respondent's report to the Lago Agrio court in support of their damages assessment.  Petitioner's request for discovery appears to be a "good faith effort to elicit evidence that has probative value in both the Lago Agrio and [UNCITRAL] Arbitration proceedings."[59]  There is no evidence of bad faith or an attempt to circumvent foreign proof-gathering restrictions.

The fourth Intel factor—whether the discovery sought is unduly intrusive or

---

[56] Chevron Corp., 10-CV-29890-Aw, 10-CV-2990-AW, 2010 U.S. Dist. LEXIS 124897, at *9–10 (S.D. Md. Nov. 24, 2010).

[57] Joint Brief Opp'n, at 13–17 [#23].

[58] Minatec Fin. S.a.r.l. v. SI Group Inc., No. 1:08-CV-269 (LEK/RFT), 2008 U.S. Dist. LEXIS 63802, at *26 (N.D.N.Y. Aug. 18, 2008); see also In re Viega, No. 10-370, 2010 U.S. Dist. LEXIS 111468, at *40 (D.D.C. Oct. 20, 2010).

[59] Supplemental Req. Judicial Notice, Ex. C, 12 [#42] (attaching Chevron Corp. v. Barnthouse, No. 1:10-mc-53 (W.D. Ohio Nov. 26, 2010)).

burdensome—weighs slightly in favor of granting discovery.  Petitioner argues (1) that it has

narrowly tailored its discovery request to material relevant to the Lago Agrio Litigation and the

UNCITRAL arbitration[60] and (2) that any possibly intrusive nature of its discovery request is

justified by plaintiffs' original fraud.[61]  Respondent argues here that other than accusing the Lago

Agrio plaintiffs of bad behavior unrelated to Respondent's report, Petitioner does not articulate

how anything about Respondent's report could actually be considered "fraudulent."[62]

Respondent's bases and sources are explicit in his report.[63]  This court agrees with three other

district courts that have ruled on Petitioner's § 1782 applications.  Namely, the discovery request

at issue is not unreasonable because it seeks to discover the extent to which Respondent's expert

opinion is influenced by Cabrera or others along with the underlying basis for his expert opinion.

Such "discovery not duplicative of pre-September 16, 2010 Section 1782 evidence produced."[64]

The discovery request is not unduly intrusive and burdensome.  The fourth Intel factor therefore

---

[60] Petitioner's request should be "specifically and narrowly tailored" to the issues being addressed by the foreign tribunal.  Minatec, 2008 U.S. Dist. LEXIS 63802, at *27.

[61] Ex Parte App., 17 [#2].

[62] Joint Brief Opp'n, at 12, 20 [#23].

[63] Joint Brief Opp'n, at 20–22 [#23].  Respondent also appears to argue that the request is burdensome because of the large amount of § 1782 applications by Petitioner nationwide.  Id. This court finds those arguments unconvincing given that (1) Petitioner's applications were prompted by Respondent's filing of the expert reports in the Lago Agrio court on September 16, 2010 and (2) the Parties have now agreed on a deposition and discovery schedule.  Joint Stip. & Prop. Order [#17].

[64] Supplemental Req. Judicial Notice, Ex. C, 12 [#42] (attaching Chevron Corp. v. Barnthouse, No. 1:10-mc-53, at 13 (W.D. Ohio Nov. 26, 2010)); see also Chevron Corp., 7:10-mc-00067, 2010 U.S. Dist. LEXIS 125174, at *11–12 (W.D. Va. Nov. 24, 2010); Chevron Corp., 10-CV-29890-Aw, 10-CV-2990-AW, 2010 U.S. Dist. LEXIS 124897, at *11–12 (S.D. Md. Nov. 24, 2010).

weighs at least slightly in favor of granting discovery.

The first and third factors weigh heavily in favor of granting discovery. The second and fourth factors weigh slightly in favor of granting discovery. The factors together therefore support granting Petitioner's application for discovery.

      c.      <u>The Parties' Remaining Arguments</u>

The Parties have a few remaining arguments, which this court addresses below.

      1.      <u>Application of Newly Amended Federal Rule Civil Procedure 26</u>

Federal Rule of Civil Procedure 26 was amended (and became effective) on December 1, 2010 particularly to protect draft expert materials and some attorney-expert communications from discovery.[65] The new Rule 26 is supposed to govern "all proceedings" pending on December 1, 2010 insofar as "just and practicable."[66]

Rule 26(a)(2) and (b)(4) govern disclosure of and discovery from experts, respectively. The 2010 new Rule 26(a)(2)(ii) now provides that an expert report must contain the "facts or data considered by the witness in forming [the opinions to be expressed]," whereas the old Rule more expansively required the report to contain "the data or other information considered by the witness in forming [the opinions to be expressed]."[67]

The new Rule 26(b)(4) has been changed by inserting two new sections, (B) and (C):

***(4) Trial Preparation: Experts.***

---

[65] Fed. R. Civ. P. 26(b)(4)(B)–(C).

[66] Order of Apr. 28, 2010 (transmitting to Congress proposed 2010 rule amendments).

[67] Fed. R. Civ. P. 26(a)(2)(A)(ii).

14

**(A)** *Deposition of an Expert Who May Testify*. A party may depose any person who has been identified as an expert whose opinions may be presented at trial. . . .

**(B)** *Trial-Preparation Protection for Draft Reports or Disclosures*. Rules 26(b)(3)(A) and (B) protect drafts of any report or disclosure required under Rule 26(a)(2), regardless of the form in which the draft is recorded.

**(C)** *Trial-Preparation Protection for Communications Between a Party's Attorney and Expert Witnesses*.  Rules 26(b)(3)(A) and (B) protect communications between the party's attorney and any witness required to provide a report under Rule 26(a)(2)(B), regardless of the form of the communications, except to the extent that the communications:

> (I)     relate to compensation for the expert's study or testimony;
>
> (ii)    identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or
>
> (iii)   identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed.[68]

The Advisory Committee Notes to the Proposed 2010 Amendments to Rule 26 provide relevant guidance to the Parties.  In particular, although the revision of Rule 26(a)(2)(B)(ii) to allow disclosure of "facts or data" excludes theories or mental impressions of counsel, the phrase "facts or data" should still be "interpreted broadly to require disclosure of any material considered by the expert, from whatever source, that contains factual ingredients.  The disclosure obligation extends to any facts or data 'considered' by the expert in forming the opinions to be expressed, not only those relied upon by the expert."[69]  Additionally, the revision of Rule 24(b)(4) should not "impede discovery about the opinions to be offered by the expert or the development, foundation, or basis of those opinions."[70]

---

[68] Fed. R. Civ. P. 26(b)(4).

[69] Advisory Committee Notes to Fed. R. Civ. P. 26.

[70] Advisory Committee Notes to Fed. R. Civ. P. 26 ("[I]nquiry about communications the expert had with anyone other than the party's counsel about the opinions expressed is unaffected

It is just and practicable to apply the new Rule 26. First, the old Rule 26 faced conflicting interpretations, which the First Circuit never addressed.[71] Second, the Parties—particularly Petitioner and plaintiffs—have had ample notice of the provisions of the new rules that will apply and should have been able to prepare accordingly.[72] Petitioner filed this application on October 22, 2010, not long before the new Rule 26 was to take effect.[73] Respondent agreed that it could produce documents responsive to Petitioner's subpoena (if ordered to do so) on December 1, 2010 and the Parties agreed that discovery would take place during December.[74] Applying the new Rule 26 therefore will not result in changing the "applicable rules mid-course."[75] Finally, even with the new Rule 26, Petitioner should have a sufficient opportunity to depose Respondent and discover the facts underlying his opinion.

2.      Application of Federal Rule of Civil Procedure 30(a)(2)(A)(I)

---

by the rule.").

[71] The majority interpretation of the old Rule 26 applied a bright-line rule in which matters considered by a testifying expert in formulating his or her opinion, including attorney work product, were automatically discoverable. S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv., 257 F.R.D. 607, 612 (E.D. Cal. 2009) (collecting cases on majority interpretation). In contrast, a minority interpretation held that the disclosure of core work product to a testifying expert did not abrogate the protection accorded to such information. Id. at 613. The majority interpretation created "undesirable effects" in old Rule 26. Advisory Committee Notes to Fed. R. Civ. P. 26. The First Circuit never considered the issue and courts in the Circuit were split on the matter. Galvin v. Pepe, 09-cv-104-PB, 2010 U.S. Dist. LEXIS 92442, at *11–12 (D. Ct. N.H. Aug. 5, 2010).

[72] Id.

[73] Ex Parte App. [#1].

[74] Joint Stip. & Prop. Order, 3 [#17].

[75] Supplemental Req. Judicial Notice, Ex. C [#42] (attaching Chevron Corp. v. Barnthouse, No. 1:10-mc-53, at 19 (W.D. Ohio Nov. 26, 2010)).

The Federal Rules of Civil Procedure govern discovery authorized by § 1782.[76]  Rule 30

limits the number of depositions that a party make take without leave of court in certain

instances.[77]  One such instance includes if the deposition would result in more than ten depositions

being taken under Rule 30 or 31 by "the plaintiffs, or by the defendants, or by the third-party

defendants."[78]  Respondent argues that Petitioner, having taken eleven depositions in various §

1782 actions, is prohibited by Rule 30 from taking this deposition.[79]  Petitioner responds that Rule

26 governs expert depositions and it is not therefore limited from conducting these depositions.[80]

Rule 30 does not bar Petitioner's § 1782 application here for a few reasons.  First, it is

unclear whether Rule 30 applies to disparate § 1782 actions.  There is an open question,

unaddressed by the First Circuit, concerning whether the Rule 30 limit on depositions applies to

depositions of experts.[81]  More importantly, however, Respondent and plaintiffs provide no

authority for the proposition that multiple § 1782 proceedings in disparate jurisdictions should be

---

[76] 28 U.S.C. § 1782(a) ("To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.").

[77] Fed. R. Civ. P. 30(a)(2) (requiring the court to grant leave to the "extent consistent with Rule 26(b)(2)").

[78] Fed. R. Civ. P. 30(a)(2)(A)(I).

[79] Joint Brief Opp'n, 2 n.1 [#23].

[80] Chevron Corporation's Mem. Reply Resp't & Pls.' Opp'n Chevron's Appl. Disc. Under 28 U.S.C. § 1782, 14 [#30] [hereinafter Chevron's Reply Opp'n].

[81] See, e.g., Presidio Components, Inc. v. Amer. Technical Ceramics Corp., 08cv335 IEG (NLS), 2009 U.S. Dist. LEXIS 25562, at *8 n.4 (S.D. Cal. Mar. 25, 2009); Express One Int'l, Inc. v. Sochata, No. 3-97 CV3121-M,  2001 U.S. Dist. LEXIS 25281, at *7–9 (N.D. Tex. Mar. 2, 2001).

treated as a single case for the purpose of Rule 30.  Absent a clearer indication that Rule 30

should apply here, this court will not apply it.  Second, even if Rule 30 should apply, Respondent

has not met any of the conditions of Rule 26(b)(2)(C) that would require this court to limit the

requested discovery.[82]  For instance, Respondent has not shown that the discovery sought is

unreasonably cumulative or duplicative, or that it can be obtained from another more convenient,

less burdensome, or less expensive source.[83]  Plaintiffs submitted Respondent's expert report in

the Lago Agrio Litigation (upon which the Ecuadorian court may rely) to support plaintiffs'

damages assessment and they therefore could expect that Petitioner would seek the requested

discovery.[84]

---

[82] Fed. R. Civ. P. 26(b)(2)(C) provides:

> *When Required.* On motion or on its own, the court must limit the frequency or extent of
> discovery otherwise allowed by these rules or by local rule if it determines that:
>
>> (i) the discovery sought is unreasonably cumulative or duplicative, or can be
>> obtained from some other source that is more convenient, less burdensome, or less
>> expensive;
>>
>> (ii) the party seeking discovery has had ample opportunity to obtain the
>> information by discovery in the action; or
>>
>> (iii) the burden or expense of the proposed discovery outweighs its likely benefit,
>> considering the needs of the case, the amount in controversy, the parties'
>> resources, the importance of the issues at stake in the action, and the importance
>> of the discovery in resolving the issues.

[83] See Id.

[84] Cf. Chevron Corp. v. Stratus Consulting, Inc., 10-cv-00047-MSK-MEH, 2010 U.S.
Dist. LEXIS 110023, at *33–34 (D. Ct. Colo. Oct. 1, 2010) ("In an adversarial proceeding, a
process designed to reach the truth of the matter through the presentation of opposing
perspectives, justice does not permit one side to inform and facilitate a damages assessment,
purposed for the reliance of the court, without permitting its opponent access to the materials and
process underlying the assessment.").

3.     Crime-Fraud Exception

Petitioner argues that the attorney-client privilege does not shield Respondent because the

crime-fraud exception applies to Respondent's work insofar as his work is part of the plaintiffs'

fraudulent scheme to pass off the Cabrera Report as a legitimate evaluation by a neutral expert.[85]

Petitioner argues that three requirements are met: (1) the plaintiffs interacted with Respondent for

the purpose of getting advice for the commission of a crime or fraud; (2) there is a prima facie

showing that a sufficiently serious crime or fraud occurred because four federal courts have found

prima facie evidence of crime or fraud by the plaintiffs and their other consultants with respect to

the Cabrera Report;[86] and (3) there is some relationship between the communication at issue and

the prima facie violation because Respondent's report cites the Cabrera Report extensively and

simply computes a new damage number using Cabrera as a foundation.[87]

The attorney-client privilege generally protects communications between a lawyer and a

client, unless one of several exceptions applies.[88]   In particular, the crime-fraud exception

"withdraws protection where the client sought or employed legal representation in order to

commit or facilitate a crime or fraud."[89]   The First Circuit requires the privilege challenger to

---

[85] Chevron's Reply Opp'n, 17–18[#30].

[86] Chevron's Reply Opp'n, 18 [#30].

[87] Chevron's Reply Opp'n, 19–20 [#30] (citing Respondent's report, which reads, "Starting with the Cabrera report's engineering figures and cost estimates . . .").

[88] Cf. United States v. Zolin, 491 U.S. 554, 562–63 (1989).  The crime-fraud exception can also apply to overcome the work-product doctrine.  See, e.g., United States v. Ramos-Gonzalez, CR. NO. 07-0318 (PG), 2010 U.S. Dist. LEXIS 113971, at *15–16 (D.P.R. Oct. 25, 2010); In re Grand Jury Subpoena, 220 F.R.D. 130, 140–41 (D. Mass. 2004).

[89] In re Grand Jury Proceedings, 417 F.3d 18, 22 (1st Cir. 2005).

19

present evidence of two elements: "(1) that the client was engaged in (or was planning) criminal

or fraudulent activity when the attorney-client communications took place; and (2) that the

communications were intended by the client to facilitate or conceal the criminal or fraudulent

activity."[90]  There are a few important limitations contained within this standard.  First, the party

seeking discovery must provide a "reasonable basis" to believe that the lawyer's services were

used by the client to foster a crime or fraud.[91]  Second, the exception requires a showing of the

"*client's* engagement in criminal or fraudulent activity and the *client's* intent with respect to

attorney-client communications."[92]  Third, forfeiture of the privilege requires that the client "use

or aim to use" the attorney to foster the crime or fraud.[93]

   Petitioner here has failed to present sufficient evidence to justify application of the crime-

fraud exception.  Although Petitioner is correct that other courts applied the crime-fraud

exception,[94] Petitioner has not pointed to any evidence that would provide a reasonable basis to

believe that this particular Respondent used any lawyer's services to foster a crime or a fraud.

Petitioner points to Respondent's citation of and reliance upon the Cabrera report as evidence of a

---

[90] Id. (quoting In re Grand Jury Proceedings (Violette), 183 F.3d 71, 75 (1st Cir. 1999)).

[91] Id. at 23 (explaining that piercing the privilege is possible on something less than a
mathematical probability that the client intended to use the attorney in furtherance of a crime or
fraud).

[92] Id. at 23.

[93] In re Grand Jury Proceedings, 417 F.3d at 23 ("The attorney-client privilege is forfeited
*inter alia* where the client sought the services of the lawyer to enable or aid the client to commit
what the client knew or reasonably should have known to be a crime or fraud." (citing United
States v. Rakes, 136 F.3d 1, 4 (1st Cir. 1998))).

[94] See Ex Parte App., 2 [#2].

20

link between the fraud of the Cabrera report and Respondent's report.[95]   But Respondent's

explicit attribution of the Cabrera report was an act of transparency that allowed Petitioner to

quickly ascertain Respondent's reliance upon the Cabrera report and investigate it through

discovery.   Additionally, Petitioner has not shown Respondent engaged in or intended any

criminal or fraudulent activity.   Namely, Petitioner has not presented evidence that Respondent

knew of an alleged fraud in Cabrera's report or that Respondent knew he was participating in an

alleged fraud (by relying on certain sources).   Petitioner has failed not only the first element of the

First Circuit standard, but the second element as well.   Namely, Petitioner has not provided any

evidence that suggests Respondent used or aimed to use communication with his lawyer to

facilitate or conceal a crime or fraud.   Given the insufficient showing by Petitioner regarding

Respondent's activity and intentions, the crime-fraud exception does not apply in this case.

4.   Testifying Expert

Finally, this court does not agree with Respondent that he is not a testifying expert in the

Lago Agrio Litigation.   Rather, Respondent likely qualifies as a testifying expert because he

submitted his expert report to the Ecuadorian court and he therefore "conveyed, share, or

otherwise provided his own expertise" to be considered by the court on a subject "likely the

ultimate object of the litigation."[96]   Although it is not clear whether Respondent is a testifying

---

[95] Chevron's Reply Opp'n, 19 [#30].

[96] Chevron Corp. v. Camp, No. 1:10-mc-27, 1:10mc28, 2010 U.S. Dist. LEXIS 9744, *15 (W.D.N.C. Aug. 30, 2010) ("[A]ny consulting expert privilege assertable by Mr. Champ has been clearly waived inasmuch as it has been clearly shown that Mr. Champ became a testifying expert when he conveyed, shared, or otherwise provided his own expertise to the soon to be court appointed independent Ecuadorian expert, as well as numerous persons in the meeting room. . . . Further, the [Ecuadorian] court determined that Mr. Champ's expertise, which appears to be remediation and the cost of clean up of oil spills, amount to shared expertise on what was likely

expert for the UNCITRAL Arbitration, his status as testifying expert for the Lago Agrio

Litigation means that discovery will occur pursuant to Rule 26(b)(4).[97]


IV.    Conclusion

       For the foregoing reasons, Petitioner's Ex Parte Application of Chevron Corporation for

an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery on Jonathan S. Shefftz for Use in

Foreign Proceedings [#1] is ALLOWED IN PART and DENIED IN PART.  Petitioner's

Application is ALLOWED insofar as Petitioner may conduct discovery and a subpoena may be

executed upon Respondent.  Petitioner's Application is DENIED insofar as it must modify its

existing proposed subpoena[98] to comply with the new Rule 26.[99]

AN ORDER HAS ISSUED.

                                                   ___/s/ Joseph L. Tauro_____
                                                   United States District Judge

---

the ultimate object of the litigation, an award of damages.").

       [97] Moreover, discovery is also "for use" in the UNCITRAL arbitration at least insofar as
the UNCITRAL arbitration might be interested in the product of Petitioner's discovery (e.g., as it
relates to and reveals information relevant to Petitioner's allegations of collusion between the
GRE and plaintiffs).

       [98] Decl. Claudia M. Barrett Supp. Ex Parte Appl. Chevron Corp. Order Pursuant to 28
U.S.C. §1782 Conduct Discovery Jonathan S. Shefftz Use Foreign Proceedings, Ex. A [#3].

       [99] The proposed subpoena must also comply with this court's Memorandum and Order.